JEROME J. OPPENHEIMER, Respondent, v. WASHINGTON ASSURANCE CORPORATION OF NEW YORK, Appellant.

First Department, April 12, 1935.

*Maxwell J. Kaplan,* for the appellant.

*Herman Hoffman,* for the respondent.

UNTERMYER, J. The defendant issued its fire and theft policy covering the plaintiff's Pierce Arrow automobile for a term of one year ending at noon on July 14, 1933. This action is brought to recover on the policy for the loss of the plaintiff's automobile by theft on July thirteenth, the day before the insurance would have expired, and its complete destruction by fire at Fosterdale, N. Y., about 120 miles distant from plaintiff's residence in New York city.

Payment on the policy was refused on the ground that it had been invalidated by reason of the violation by the plaintiff of the conditions set forth in the following provision:

" *Misrepresentation and fraud.* This entire policy shall be void if the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

In a separate defense it was alleged that the violation consisted in the concealment and misstatement under oath of material facts concerning the loss. In particular it was contended that the plaintiff had received information concerning the alleged theft and the location of the automobile but had made false statements with relation thereto with intent to deceive the defendant insurance company and to induce it to pay $1,722 for the loss of his automobile. The court refused to submit to the jury the question whether the plaintiff had been guilty of intentional false swearing in relation to the loss and submitted only the question whether the automobile had been taken with his connivance or collusion even though the latter issue was not tendered by the answer nor litigated at the trial. Upon the single issue thus submitted the jury found in favor of the plaintiff. Under the court's charge, however, the real issue litigated at the trial, that the insured had sworn falsely concerning the circumstances under which he acquired knowledge of the loss, could not have been considered by the jury.

We think that there was error in this ruling of the trial court.

In the plaintiff's written statement to the defendant he claimed that on July 13, 1933, at about eight A. M., he had taken the car from the Allen Garage and, after using it throughout the day, had parked it at about six-thirty in the evening on the north side of Eighty-sixth street, about 100 feet to the east of the apartment house where he resided. The plaintiff testified that at about eight-thirty in the evening he went from his apartment to the street to take the car to the garage and then found it to be missing. He returned to his apartment and at about nine o'clock telephoned to the police but was told that it would be necessary to go personally to the police station, and this he did. When examined under oath, pursuant to a provision in the policy, the plaintiff testified that he had first received information that the automobile had been found from a police officer who called at his home between six-thirty and seven-thirty on Friday evening, July fourteenth, and informed him that the name of the place where the car was found was "Dale." According to the plaintiff, he first learned of the correct location on Saturday morning, July fifteenth, from the defendant's adjuster, Hamilton.

The evidence offered by the defendant would have justified the jury in finding that certain of these statements were intentionally false. If the jury had so found, then, under the express provisions of the policy, it was unenforcible. (*Kantor Silk Mills, Inc.*, v. *Century Ins. Co., Ltd.*, 223 App. Div. 387; affd., 253 N. Y. 584.) We might perhaps disregard the discrepancy with respect to the precise point at which the plaintiff parked the car on the evening of July thirteenth, which in his signed statement is given as one hundred feet to the east of the apartment house in which he lived and at the trial thirty or forty feet to the east. Standing alone, we might even disregard as immaterial the plaintiff's misstatement that on the morning of July thirteenth he had taken the car from the "Allen" Garage, whereas he later conceded that he had taken it from "Patsy's" Garage, where he claimed to have left it the previous evening for repairs which, it subsequently developed, were not made. But taking all the circumstances in their relation to one another and in relation to other evidence soon to be referred to, it cannot be said that the statements of fact made by the plaintiff to the defendant, if intentionally false, were so inconsequential that they might be disregarded as matter of law.

The records of the telephone company show that at eight-fifty-eight on the evening of July thirteenth — within three hours after the plaintiff claims last to have seen the car — a telephone call was made from a public pay station at Fosterdale, N. Y., to the plaintiff's residence on East Eighty-sixth street, New York city. Almost exactly at this time the plaintiff by telephone notified the

police department that his car was missing. Although the plaintiff denied that he had received any such telephone call from Fosterdale, evidence offered by the defendant would have justified the jury in finding to the contrary, and that consequently he had intentionally misstated the circumstances under which he had learned of the disappearance of the car and of its presence in Fosterdale. Baker, an employee of an insurance firm representing the defendant, testified that at about nine o'clock on the morning of July fifteenth he had received a telephone message from the plaintiff to the effect that his car was at Willarad's Garage in Fosterdale in a destroyed condition. The witness testified that contemporaneously he had made a memorandum of these facts, and the memorandum was received in evidence. The witness Hamilton, an independent insurance adjuster, also testified that he had called at the plaintiff's office at noon on July fifteenth, and was then informed by the plaintiff of the name of the garage and the correct name of the town where the car was to be found. Since the plaintiff testified that the police officer on the evening of July fourteenth had incorrectly given the name of the town where the car had been found as " Dale," it is difficult to understand, if Baker and Hamilton are to be believed, how the plaintiff could have known the correct name of the town and the name of the garage where the car was to be found unless he had received the telephone message from Fosterdale to his apartment on the evening of July thirteenth. The plaintiff conceded that he had never before heard of Fosterdale and that there would be no occasion for any one to telephone to him from that locality. He claimed first to have learned of the correct location of the automobile on Saturday morning, July fifteenth, from Hamilton. This, however, was denied by Hamilton and Baker, both of whom testified that it was the plaintiff who gave them the information that the car was at Willarad's Garage in Fosterdale. If the jury believed this evidence it might well have concluded that the plaintiff was informed of the destruction of the car by someone at Fosterdale on the evening of July thirteenth and that not only had he withheld this information from the defendant but that he had intentionally misstated the circumstances under which he acquired knowledge of the loss.

The determination appealed from and the judgment and order of the City Court should be reversed, and a new trial ordered, with costs to the appellant in all courts to abide the event.

MARTIN, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Determination appealed from and judgment and order of the City Court reversed and a new trial ordered, with costs to the appellant in all courts to abide the event.